**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 1:21-CR-017(2)** |
| Plaintiff, | : | |
| v. | : | **JUDGE COLE** |
| **RYAN CARTER,** | : | |
| Defendant. | : | **GOVERNMENT'S RESPONSE TO EMERGENCY MOTION FOR FURLOUGH BY DEFENDANT RYAN CARTER** |

The defendant, Ryan Carter, asks this Court for a brief release from pretrial detention to attend his brother's funeral on March 28, 2022. In the alternative, he asks the Court to order the United States Marshals Service (USMS) TO transport him to and from the funeral on the same date. Because the USMS cannot transport Carter to attend funeral services, and because his release poses a risk of danger to the community and a risk of flight, the government respectfully requests the Court deny Carter's emergency motion.

## RELEVANT BACKGROUND

On March 11, 2021, a federal Grand Jury returned a single count Indictment charging Carter and his co-defendant with Use of a Firearm to Commit Murder During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(j). (R. 4, Indictment.) Despite efforts by law enforcement, Carter was not arrested for two months. On May 10, 2021, Carter appeared before the Honorable Stephanie K. Bowman for an initial appearance. (R. 19, Initial Appearance Criminal Minutes.) Based on the nature of the charge, there was a presumption of detention, and the government requested a hearing. (*Id.*)

The Court held a detention hearing on May 12, 2021. (R. 28, Detention Hearing Criminal Minutes.) At the hearing, the Court found the government proved, by clear and convincing evidence, that there were no conditions or combination of conditions of release that would reasonably assure the safety of any other person and the community. (R. 30, Detention Order.) The Court found that the following facts supported detention: the weight of the evidence against Carter is strong; Carter is subject to a lengthy period of incarceration if convicted; Carter's criminal history; Carter's history of violence or use of weapons; Carter's prior failures to appear; Carter's active warrant; and the nature of the charges. (*Id.*)

On March 22, 2022, Carter filed an Emergency Motion for Furlough. (R, 47, Emergency Motion for Furlough.) He asks for a temporary furlough to attend his brother's funeral services. (*Id.*) In support of his motion, Carter argues that he had a close bond with his brother and attending the funeral services is important for several reasons to include acknowledgement, grief, hope, and faith. He also cites to the age of the allegations, the fact that another person was mistakenly arrested in 2015, and the fact that he is unaware of any witness that will identify Carter as one of the perpetrators of the crime. The government opposes Carter's request.

## **ARGUMENT**

In his motion, Carter asks this Court to temporary release him on March 28, 2022, to attend his brother's funeral, or to direct the USMS to transport him to the funeral. Because Carter is ineligible for USMS transport to the funeral, the government addresses this argument first.

Pursuant to 18 U.S.C. § 3622, the BOP may release a prisoner to attend a funeral of a relative if

> such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 944(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner

2

will honor the trust imposed in him.

18 U.S.C. § 3622(a)(2) (2022). 28 C.F.R. § 570.30 et seq. describes the BOP procedures governing the furlough program. Under 28 C.F.R. § 570.31, Carter is not eligible for a BOP furlough to attend the funeral because he is an inmate housed in a contract facility. 28 C.F.R. § 570.31(b)(2) (2022).

Furthermore, according to the USMS, the USMS cannot transport Carter to attend the funeral as requested. However, the USMS can transport Carter to a private viewing of the body at the funeral home. This procedure requires Carter's family to bear the cost of the private viewing, which must be paid by cashier's check to the USMS before arrangements are made. Here, the USMS estimates the cost for this arrangement is $1,287. The government does not object to this procedure provided the funeral home can arrange a private viewing at a time that accommodates the USMS court schedule and Carter's family is able to pay the expenses to the USMS in advance.

Given the inability of the USMS to transport Carter to the funeral services, the only option for Carter to attend the funeral is a temporary release from jail to a family member, which is the relief Carter primarily requests in his motion. Because Carter's release poses a danger to the community, the government opposes this request.

18 U.S.C. § 3142(i) governs the temporary release of a pretrial detainee. The statue states, in relevant part:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reasons.

18 U.S.C. § 3142(i).

Here, Carter must show his release is for another compelling reason and that he would be released to another appropriate person. He has not made this showing.

3

When deciding whether to temporarily release Carter under the statute, this Court should consider Carter's dangerousness and risk of flight. *See United States v. Williams*, No. 2:20-cr-81, 2020 WL 4431565, at *2 (W.D. Penn. July 31, 2020) ("When the court interprets 'compelling reason,' it should do so against the backdrop of the Bail Reform Act as a whole."). Here, Carter's dangerousness and risk of flight counsels against temporary release.

The nature and circumstances of the offense show that Carter is a danger to the community. The government alleges that the defendants acted together to rob the victim on January 29, 2015, and during the robbery, shot the victim multiple times. The victim died from his injuries on February 7, 2015. Carter is charged with use of a firearm to commit murder during and in relation to a crime of violence in violation of 18 U.S.C. § 924(j). (R. 4, Indictment.) Armed robbery and murder are among the most serious offenses in our criminal justice system. If convicted, Carter faces a mandatory minimum term of imprisonment of ten years, up to death or imprisonment for any term of years or life. The nature and circumstances of the offense weigh against release.

Carter's history and characteristics also demonstrate that his release presents a danger to the community and a risk of flight. He has a history of committing violent crimes and firearms offenses. In 2013, Carter was convicted of aggravated robbery, and in 2017, he was convicted of being a felon in possession of a firearm and enhanced possession of marijuana. Moreover, Carter committed the instant alleged offense while on community control, demonstrating his inability to follow court orders. Carter has prior failures to appear and an active warrant from Sharonville Mayor's Court. What's more, after the Court issued an arrest warrant for Carter, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives struggled to locate Carter because he was staying at multiple addresses. This aligns with information provided to Pretrial Services noting that Carter lived at a residence on Dayton Street "off and on."

4

Carter's attempts to minimize the serious nature of the allegations and the danger he presents if released by arguing that the allegations are old, and another person was arrested for the offense in 2015. The fact that another person was arrested for the crime, but not indicted, does not negate the Grand Jury's finding of probable cause to charge Carter with this crime. Moreover, Carter is no less dangerous because he is alleged to have murdered someone in 2015, instead of yesterday or last year. Allegations of murder are as serious today as they were seven years ago. This is especially true as it relates to dangerousness given Carter's willingness to continue carrying firearms, as evidenced by his 2017 conviction. Temporary release carries a real and serious risk to the safety of the community.

Furthermore, courts have routinely held that the death of a close family member is not "another compelling reason" under 18 U.S.C. § 3142(i). In *United States v. Rangel*, the district court was "unable to find any case in which a Court has found that attending a funeral is a 'compelling reason' to temporarily release someone on 18 U.S.C. § 3142(i)[.]" *United States v. Rangel*, No 1:21-cr-0682, 2022 WL 43512, at *2 (D.N.M. Jan. 5, 2022). The Court denied the defendant's motion to attend a funeral where the defendant did not show that conditions could be imposed that would assure his return to custody and the safety of the community, especially given the presumption of detention. *Id.* at *2. *See also United States v. Navarro*, No. 2:19-cr-056-JCM-DJA, 2020 WL 5877816, at *2 (D. Nev. Oct. 2, 2020) (finding the death of the defendant's father and subsequent funeral did not rise to the level of another compelling reason under 18 U.S.C. § 3142(i)); *Williams*, 2020 WL 4431565 at *2-3 (denying temporary release for the defendant to attend his brother's funeral). Here, Carter has not shown that attending his brother's funeral is a compelling reason to temporary release.

The government sympathizes with Carter for the loss of his brother; his death is nothing

5

short of a tragedy. However, Carter has not met his burden under 18 U.S.C. § 3142(i). He remains a danger to the community and presents a risk of flight. Temporary release is not appropriate under the statute.

## CONCLUSION

For the reasons state above, the government respectfully requests that the Court deny Carter's Emergency Motion for Furlough (R. 47).

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/Ashley N. Brucato*
ASHLEY N. BRUCATO (0090989)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, OH 45202
(513) 684-3711
Ashley.Brucato@usdoj.gov

6